JOHN HOPKINS and Another, Respondents, *v.* ANNA FREY, Appellant, Impleaded with Others, Defendants.

*Foreclosure — failure of a guardian* ad litem *to answer — it does not affect the validity of the proceeding — a mistake of law.*

In an action, brought in 1891, to set aside a quit-claim deed, executed in 1883 by the plaintiffs to one Sanguinetti, it appeared that in 1875 a mortgage covering the premises in question was foreclosed, in which action the plaintiffs, then infants, had an interest; that they were served with the summons, and that a guardian *ad litem* was regularly appointed for them; that the guardian did not answer or in any manner ever appear in the foreclosure action; that the purchaser on the sale conveyed to Sanguinetti, who, to cure the defect arising from the guardian's failure to answer in 1883, procured from the plaintiffs, then of age, a quit-claim deed or release.

In this action, brought to set aside this deed, a grantee of Sanguinetti interposed a demurrer to the complaint.

*Held,* that the complaint stated no cause of action.

That under the Code of Procedure (§ 134, sub. 2; § 116, sub. 2), as well as under the Code of Civil Procedure, the court, by the appointment of the guardian *ad litem*, acquired jurisdiction, and that the responsibility of the party foreclosing the mortgage then ended.

That, if the guardian failed to do his duty, this was a matter which concerned only the infants, and did not affect the validity of the foreclosure.

That the statements of Sanguinetti, at the time the release was procured, to the effect that the defect was only technical, were not false, but correctly stated the law, and that in any event the plaintiffs were of full age, and were as competent as Sanguinetti to decide upon the validity of the foreclosure.

APPEAL by the defendant, Anna Frey, from an interlocutory judgment of the Supreme Court, entered in the office of the clerk of the city and county of New York on the 1st day of March, 1892, overruling her demurrer interposed to the amended complaint, after a trial by the court at the New York Special Term.

The action was begun in 1891.

*A. R. Dyett*, for the appellant.

*I. Newton Williams*, for the respondents.

BARRETT, J.:

The demurrer brings up the single question whether the complaint states facts sufficient to constitute a cause of action. Stripped of verbiage, the complaint sets forth that in the year 1875 the executors of one Landgrebe commenced an action in this court for the foreclosure of a second mortgage upon certain property in which the plaintiff John Everett Hopkins and his brother Frank Hopkins (since deceased) were interested. John Everett and Frank Hopkins were, in fact, the heirs-at-law of the mortgagor, Sarah E. Hopkins, who died in the year 1874. The present plaintiff, John Hopkins, was her husband. These heirs-at-law were minors when the mortgage was foreclosed, and the court appointed a guardian *ad litem* for them. The plaintiff then proceeded to judgment, and in October of the same year the property was sold by a referee to Mr. Christopher Fine. In November, 1875, Fine sold the property to the defendant Sanguinetti, who, in the year 1884, conveyed a part of it " by way of gift or sale " to the appellant Frey. It is alleged that the guardian *ad litem* for John Everett and Frank Hopkins did not appear, answer or demurr in the foreclosure suit, and that he failed to perform any of the acts and duties required of him by the statutes and rules of court then in force. This is the only material fact which is alleged as against the foreclosure judgment. All else is either characterization or conclusion, *e. g.*, that the court never acquired jurisdiction as to the minors, and that the judgment was void, etc. The statement that the referee never qualified or took an oath is immaterial, as no oath was called for *after his appointment*, nor was he required to give a bond or to qualify in any

other formal manner. The court acquired jurisdiction by the service of the summons upon the infants, as provided by law, and after such service was completed, by the appointment of a guardian *ad litem.* Such is the practice now and such was the practice in 1875 under the old Code. (Code of Procedure, § 134, subd. 2; § 116, subd. 2.) The plaintiff in the foreclosure suit was bound to bring the infants within the jurisdiction of the court, to see to it that they were duly served with process and that a guardian *ad litem* was properly appointed. There, however, his responsibility ended. He was not bound to see to it that the guardian thus appointed did his full duty to the infants according to the rules of practice. If the guardian failed in these particulars, he was liable to his ward, but the judgment of foreclosure was not invalidated by such negligence to which the plaintiff was not privy and which he could not control. There is no averment in the present complaint that the infants were not duly served with the summons as required by law, nor that they had any defense to the action, nor that the judgment of foreclosure could, even with entire diligence, have been avoided. Consequently, it must be assumed that the infants were duly served and that they had no defense.

Thus we have simply the naked fact that the guardian failed to interpose the only answer which he could have interposed, namely, the formal one which submits the rights of the infants to the court. It is upon this slight ground that the plaintiffs now, after the lapse of sixteen years, seek a decree which will enable them to question this foreclosure judgment. The neglect of the guardian to interpose a formal answer, as required by the practice, was a mere irregularity which the court would have cured by permitting such an answer to be filed at any time *nunc pro tunc.* (*Althause* v. *Radde,* 3 Bosw., 410; and, see, *Croghan* v. *Livingston,* 17 N. Y., 218, and *Crouter* v. *Crouter,* N. Y. Law Jour., April 16, 1892; 17 N. Y. Supp., 759.)

The case made by the complaint is, however, weaker than if it were a direct attack upon the foreclosure judgment. It is further alleged that in May, 1883, and after John Everett and Frank Hopkins became of age, the defendant Sanguinetti secured from them a quit-claim deed of this same property, in consideration of a trifling sum of money, and it is this quit-claim — not the foreclosure judg-

ment — which is here sought to be set aside. The plaintiffs charge that the quit-claim was obtained from them by fraud, in that Sanguinetti represented that they had no interest in the property; that their rights. had been cut off by the foreclosure in 1875; that she, Sanguinetti, was about to sell the property; that it was necessary to correct some clerical error in the foreclosure proceedings, which the court would do without the signatures of John Everett and Frank Hopkins, but that this would take a little time, and that she would pay $100 to avoid the delay and to secure the same end by their release. They agreed to this, took the money and signed the quit-claim. This is characterized as a fraud and the representations are alleged to have been untrue. But the fact is quite the reverse. Every word Sanguinetti uttered was true, and if the plaintiffs had taken the trouble to look at the record they would have. seen that what she said was quite accurate. Her facts were true, even if she erred. in her legal conclusions. The plaintiffs now say that they did not discover the falsity of her representations until 1891, but they do not tell us why they failed to make this easy discovery (that is, easy if the representations were untrue) for upwards of eight years. The record, which was the basis of the whole story, was in existence when Sanguinetti spoke, and it has been in existence ever since.

The record, so far as appears from any averment in this complaint, really disclosed the truth of Sanguinetti's statement, but were it otherwise, the Hopkins brothers were no longer minors when they were asked to sign the release. They were then men of full age, and had the same opportunity as Sanguinetti to determine whether the judgment of foreclosure was valid or invalid. It is clear, therefore, that no fraud, as matter of fact and as distinguished from adjectives and idle invective, is charged with regard to either the foreclosure proceedings or the release. None upon Sanguinetti's part. None upon her transferees, who became transferees in reliance upon the recorded quit-claim. As to these transferees, not even notice of any alleged fraud in procuring the quit-claim is alleged. The complaint fails to state facts tending to constitute a cause of action, and it is wholly without merit.

The interlocutory judgment should, therefore, be reversed, with costs and an interlocutory judgment granted sustaining the demurrer,

with costs, with leave to the plaintiffs to amend their complaint within twenty days, if so advised, upon payment of the costs of the Special and General Terms.

VAN BRUNT, P. J., and O'BRIEN, J., concurred.

So ordered.